UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PROCTOR GRAY, III,

      Plaintiff,

          v.                        CAUSE NO. 3:23-CV-755-PPS-JEM

JOE FARLEY, *et al.*,

      Defendants.

## OPINION AND ORDER

Proctor Gray, III, a prisoner without a lawyer, filed a complaint. [DE 1]. "Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Gray is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Gray, who is currently incarcerated at the Westville Correctional Facility, alleges his cell was searched on February 10, 2023, as part of a routine shakedown. When he returned, he noticed that his "medical prescribed knee cage brace, green duffle bag, and Tru-Fit lace-up ankle brace were missing." [DE 1 at 5]. He informed a nearby officer—who is not named as a defendant—that the items were gone, and the officer wrote it in the logbook. Sometime between February 13th–15th, Gray spoke with Lead Captain Joe Farley about the missing items. Gray told him he was in pain due to the lack of devices, and he showed Captain Farley "medical documents proving that [he] was authorized to have" the items. [*Id.*] Captain Farley promised to talk to the officers who had performed the search, but he never got back to Gray about any conversations he had with them. Captain Farley did, however, talk to a nurse about Gray's condition, and she gave him a "foam sleeve knee brace that do[es] not fit or give [him] the support [he] need[s]." [*Id.* at 6]. Thus, according to Gray, Captain Farley denied him access to medical care and "intentionally interfered" with the treatment that had been prescribed by an orthopedic specialist—deciding instead to "take an easier and cheaper course of treatment for the plaintiff." [*Id.*]

Gray also brought his concerns to prison officials. He spoke to Deputy Warden Kenneth Watts sometime between March 19th–24th. He told Deputy Watts he was in pain and needed his medically prescribed devices. He showed him the paperwork from the Indiana Department of Correction (IDOC) that authorized the devices, but Deputy Warden Watts responded by stating, "[T]hose documents are old and out-dated." [DE 1 at 7]. Gray then spoke with Warden John Galipeau sometime between March 24th–28th,

2

who informed him he "did not know anything about [his] medical devices being

confiscated and destroyed." [*Id.* at 8]. As with Deputy Warden Watts, Gray informed

Warden Galipeau that he was in pain, and he produced the same IDOC documents.

Warden Galipeau stated the documents were "out-dated," and he informed Gray that

the Westville Correctional Facility had their own specialist to determine whether Gray

needed those specific devices. [*Id.*] Gray claims both officials denied him access to

medical care and "intentionally interfered" with the treatment (i.e., medical devices) he

had been prescribed by an orthopedic specialist. [*Id.*]

On April 25, 2023, Gray's right knee "gave out" because he wasn't wearing the

knee-cage brace, and he injured his finger and hip while trying to catch his balance. [DE

1 at 8]. He was seen by medical a few days later, and he was given finger tape and a

wrist brace. Gray can't straighten his finger all the way, and it causes him pain. Gray

claims that, without the aid of his medical devices, he trips often which has caused

several "minor injuries." He worries that it could eventually result in a major injury.

Gray has sued Captain Farley, Deputy Warden Watts, and Warden Galipeau for

compensatory and punitive damages. He also seeks to have his medical devices

replaced and to see specialists for his finger and hip.

Inmates are entitled to constitutionally adequate medical care for serious medical

conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability

under the Eighth Amendment, a prisoner must show: (1) his medical need was

objectively serious; and (2) the defendant acted with deliberate indifference to that

need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a

space slightly below intent and poses a 'high hurdle and an exacting standard'

requiring 'something approaching a total unconcern for the prisoner's welfare in the

face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022)

(quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also*

*Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference

claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an

inmate's medical needs, he or she must make a decision that represents "such a

substantial departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a

judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has

explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care,"

*Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they

entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see*

*also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment

does not require that prisoners receive unqualified access to health care."). Rather, they

are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*,

112 F.3d at 267.

Accordingly, I will "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Here, Gray doesn't describe his medical condition other than to say he was prescribed certain medical devices from an orthopedic specialist at some point in the past. He doesn't provide details about when this occurred, whether it needs to be periodically updated, or if the authorization applies IDOC-wide or only to specific prisons. In fact, he admits prison officials looked at the documents and determined they were outdated. That said, even assuming he has a serious medical condition, his complaint suffers from other deficiencies.

Gray takes issue with Captain Farley because he never provided him with an update about a conversation he promised to have with the officers involved in the shakedown. However, he admits Captain Farley spoke with a nurse shortly after the incident about his medical needs. Although he faults Captain Farley for the nurse's decision to give him a knee brace that doesn't fit or support him properly, the actions of the nurse cannot be attributed to Captain Farley. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. Here, Captain Farley spoke to the appropriate department—medical—about the matter, and Gray was given a new knee brace, although admittedly it wasn't his original one. He concludes that this shows Captain Farley "decided to take an easier and cheaper course of treatment for the plaintiff." [DE 1 at 6]. However, it's not reasonable to infer Captain Farley was responsible for the medical decision(s) made

6

by the nursing staff. Moreover, Gray doesn't allege he spoke with Captain Farley about

any of his ongoing medical issues at any time after the week of the shakedown,

prevented him from filing a medical request, or otherwise interfered with his medical

care.[1] Accordingly, the complaint fails to state a plausible claim against Captain Farley.

Likewise, Gray cannot hold Warden John Galipeau or Deputy Warden Watts

financially liable for his allegedly inadequate medical care merely because he informed

them about his missing medical devices over the course of several days in March. As

described above, there is no general respondeat superior liability under 42 U.S.C. §

1983. *Burks*, 555 F.3d at 594. "[P]ublic employees are responsible for their own misdeeds

but not for anyone else's." *Id.* at 596. Nothing in the complaint indicates that the

Warden or Deputy Warden did anything to cause the confiscation of Gray's medical

devices—this was done by the unidentified officers who performed the shakedown of

his cell. Gray alleges these officials knew about his complaints and failed to assist him;

however, other than on a few days in March, he doesn't allege he had any contact with

the Warden or Deputy Warden whatsoever. More importantly, Gray admits he was

given a substitute brace by the medical department and that the Warden informed him

the prison had its own specialists to provide medical care. Gray doesn't allege these

officials were involved in the medical decisions made with regard to his devices,

prevented him from submitting medical requests, or otherwise interfered with receiving

---

[1] Nor does he plausibly allege Captain Farley was personally responsible for the misplacement and/or destruction of his medical devices, name any of the individuals involved in the shakedown as defendants, or name any of the medical staff as defendants.

care directly from the medical professionals. Gray's allegations aren't sufficient to

subject the Warden or Deputy Warden to personal liability. *See e.g., Walker*, 940 F.3d at

965 (it is generally appropriate to "defer to medical professionals' treatment decisions"

unless no competent medical professional would have responded the same way);

*Lockett*, 937 F.3d at 1024 ("disagreement between a prisoner and his doctor, or even

between two medical professionals, about the proper course of treatment generally is

insufficient, by itself, to establish an Eighth Amendment violation") (brackets and

citation omitted); *see also Aguilar*, 861 F.3d at 633 (division of labor in prisons is critical).

Finally, I must consider whether Gray may be entitled to a permanent injunction

for his ongoing medical needs. The warden of a correctional facility has both the

authority and the responsibility to ensure inmates receive the medical care to which

they are entitled under the Eighth Amendment. *Gonzalez v. Feinerman*, 663 F.3d 311, 315

(7th Cir. 2011). Even so, inmates cannot dictate how such medical care is provided.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act

mandates that "remedial injunctive relief must be narrowly drawn, extend no further

than necessary to correct the violation of the Federal right, and use the least intrusive

means necessary to correct the violation of the Federal right.") (internal quotation

marks, brackets, and citations omitted)); *see also Forbes,* 112 F.3d at 267 (Inmates are "not

entitled to demand specific care [nor] entitled to the best care possible."). Therefore,

injunctive relief—if granted—must be limited to requiring correctional officials to

provide medical care to the extent required by the Constitution.

Here, as noted above, Gray doesn't explain what condition he is suffering from that makes his original medical devices necessary, nor does he provide detailed information about the IDOC/medical paperwork allegedly authorizing him to have those specific devices. He does claim, however, that he "often falls while walking" without those braces and that he injured his right hand and hip, which is causing him pain. [DE 1 at 9]. He describes the injuries he has received as "minor," but he speculates the lack of his originally prescribed braces could potentially result in a "major injury" in the future. [*Id.*] While Gray's speculation alone isn't sufficient to state a claim, because he has alleged the devices were previously prescribed to him, I will give him the benefit of the inferences to which he is entitled at this stage and allow him to proceed on a claim against the Warden of the Westville Correctional Facility[2] for permanent injunctive relief to determine what, if any, devices are medically necessary under the Constitution going forward.[3]

**ACCORDINGLY**:

(1) The Clerk is **DIRECTED** to add the Warden of the Westville Correctional

---

[2] Gray specifically names John Galipeau, but he is no longer the current Warden of the Westville Correctional Facility.

[3] That said, with regard to Gray's alleged injuries, he has simply not provided enough information to state a claim. He states he "injured" his finger, wrist, and hip when he fell, but he doesn't elaborate on those injuries in any meaningful manner. [DE 1 at 9]. He describes them as "minor" and admits he was seen by the medical department within two days of the fall where he was assessed and given a wrist brace and finger taping. Other than having some lingering pain, he doesn't describe any additional medical care sought yet denied. These allegations aren't sufficient to state a plausible claim. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original)).

Facility in his official capacity as a defendant;

(2) Proctor Gray, III, is **GRANTED** leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for permanent injunctive relief to provide Proctor Gray, III, with any devices/braces deemed medically necessary to comport with the Eighth Amendment;

(3) All other claims are **DISMISSED**;

(4) Joe Farley, Kenneth Watts, and John Galipeau are **DISMISSED AS DEFENDANTS**;

(5) The Clerk is **DIRECTED**, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Westville Correctional Facility at the Indiana Department of Correction, with a copy of this order and the complaint [DE 1];

(6) The Indiana Department of Correction is **ORDERED** to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) Pursuant to 42 U.S.C. § 1997e(g)(2), the Warden of the Westville Correctional Facility is **ORDERED** to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: April 14, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT