UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PROCTOR GRAY, III, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:23-CV-755-JEM |
| | ) | |
| JOE FARLEY, *et al.*, | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**

Proctor Gray, III, a prisoner without a lawyer, filed a proposed amended complaint [DE 21]. At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When justice requires it, leave should be freely given. *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Here, although Gray has not properly sought leave to amend, because he is proceeding *pro se*, the Court will construe the proposed amended complaint itself as a motion to amend and grant it.

Under 28 U.S.C. § 1915A, the Court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that

1

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding without counsel, the Court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In his amended complaint, Gray names Captain Joe Farley as the sole defendant. He alleges he was the "supervisor in-charge" of the officers who shook down his cell on February 10, 2023, and confiscated or destroyed his medically prescribed knee cage brace, green duffle bag, and ankle brace. [DE 21] at 3. He doesn't allege Captain Farley was personally involved in the search, confiscation, or destruction. A few days later, Gray told Captain Farley about the missing medical devices and showed him documents from 1999 prescribing them. He also produced previous authorizations from other IDOC facilities and court paperwork from 1999, 2013, and 2020. He claims that Captain Farley "allowed" his officer to "do what he want[ed] with [his] medical devices (confiscated and destroyed)." *Id*. at 5. He doesn't say when this occurred. He does admit, however, that Captain Farley then "tried to make it right" by advising a nurse of the situation, but she gave him an "improper brace" as a substitute. *Id*.

On April 25, 2023, Gray's right knee "gave out," and when he "tried to catch [his] balance [he] injured [his] right-middle finger, right-wrist, and right-hip." *Id*. He was seen by medical two days later and given a wrist brace and finger taping. He claims he still can't straighten his middle finger and remains in pain. He doesn't suggest Captain Farley was involved in his post-injury medical care in any way. He seeks an injunction to replace his previously destroyed medical devices. He also asks that his finger be "fixed by an outside doctor bone specialist" and that he be "examined by a hip doctor specialist." *Id*. at 6. Finally, he seeks monetary damages against Captain Farley.

2

The Eighth Amendment, which protects against cruel and unusual punishment, is violated when prison officials display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (inmates are entitled to constitutionally adequate medical care for serious medical conditions). There is both an objective and subjective component to this type of claim. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For an individual to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

3

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference is given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Gray alleges he has a degenerative joint disease in his right knee that causes him pain without certain medically prescribed braces. Even accepting this as a serious medical condition, his amended complaint suffers from many of the same deficiencies described in the original screening order. *See generally* [DE 8]. Gray takes issue with Captain Farley because he allegedly

4

allowed officers involved in a shakedown to confiscate and destroy his medical devices which led to an injury. However, he admits Captain Farley spoke with a nurse who procured a substitute brace shortly after he started complaining about the missing devices. Although he faults Captain Farley for the nurse's decision to give him an "improper" substitute brace, the decisions of the nurse cannot be attributed to Captain Farley. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). As the Seventh Circuit has explained, "the division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen." *Burks*, 555 F.3d at 595. Moreover,

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

As noted above, Captain Farley spoke to a nurse in the appropriate department—medical— about the matter shortly after he learned the devices were confiscated and destroyed. Gray was given a new knee brace, although admittedly it wasn't his original one. He concludes that this shows Captain Farley was "trying to cover up the wrongful confiscation and destroyed medical devices that him and his officer is responsible for." [DE 21] at 5. However, it's not reasonable to infer Captain Farley was responsible for the relevant medical decision(s) made by the nursing staff. Moreover, Gray doesn't allege he spoke with Captain Farley about any of his ongoing medical

5

issues at any time after the week of the shakedown, prevented him from filing a medical request, or otherwise interfered with his medical care.[1] Accordingly, the amended complaint fails to state a plausible claim against Captain Farley. *See e.g., Walker*, 940 F.3d at 965 (it is generally appropriate to "defer to medical professionals' treatment decisions" unless no competent medical professional would have responded the same way); *Lockett*, 937 F.3d at 1024 ("disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation") (brackets and citation omitted); *see also Aguilar*, 861 F.3d at 633 (division of labor in prisons is critical).

Gray also requests a permanent injunction for his ongoing medical needs.[2] As explained in the previous screening order, the warden of a correctional facility has both the authority and the responsibility to ensure inmates receive the medical care to which they are entitled under the Eighth Amendment. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Even so, inmates cannot dictate how such medical care is provided. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes,* 112 F.3d at 267 (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore,

---

[1] Nor does he plausibly allege Captain Farley was personally responsible for the misplacement and/or destruction of his medical devices, name any of the individuals personally involved in the shakedown as defendants, or name any of the medical staff as defendants.

[2] Gray was previously granted "leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for permanent injunctive relief to provide Proctor Gray, III, with any devices/braces deemed medically necessary to comport with the Eighth Amendment." [DE 8] at 10.

6

injunctive relief—if granted—must be limited to requiring correctional officials to provide medical care to the extent required by the Constitution.

Here, Gray adequately describes a degenerative joint disease of his knee that requires medical devices to assist with ongoing pain and mobility issues. Because he has alleged the devices were previously prescribed to him for a serious medical condition, the Court will give Gray the benefit of the inferences to which he is entitled at this stage and allow him to continue to proceed on a claim against the Warden of the Westville Correctional Facility for permanent injunctive relief to determine what, if any, devices are medically necessary under the Constitution going forward.[3]

For these reasons, the Court:

(1) **CONSTRUES** the proposed amended complaint [DE 21] as a motion to amend;

(2) **GRANTS** the motion to amend [DE 21] and **DIRECTS** the Clerk to docket it as an amended complaint;

(3) **DIRECTS** the clerk to retain the Warden of the Westville Correctional Facility in his official capacity as a defendant;

(4) **GRANTS** Proctor Gray, III, leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for permanent injunctive relief to provide Proctor Gray, III, with any devices/braces deemed medically necessary to comport with the Eighth Amendment;

---

[3] That said, with regard to Gray's alleged injuries related to the April 25, 2023, incident where he attempted to "catch [his] balance," he has again simply not provided enough information to state a claim. He states he "injured" his finger, wrist, and hip when he fell, but he doesn't elaborate on those injuries in any meaningful manner. [DE 21] at 5. He admits he was seen by the medical department within two days of the incident where he was assessed and given a wrist brace and finger taping. Other than having some lingering pain and finger stiffness, he doesn't describe any additional medical care that he sought yet was denied. These allegations aren't sufficient to state a plausible claim. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original)).

(5) **DISMISSES** all other claims;

(6) **DISMISSES** Captain Joe Farley as a defendant; and

(7) **ORDERS** the Warden of the Westville Correctional Facility to respond, pursuant to 42 U.S.C. § 1997e(g)(2), as provided for in the Federal Rules of Civil Procedure and Northern District of Indiana Local Rule 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED this 17th day of September, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record